# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JENNIFER SPELL,

    Plaintiff,

    v.

COUNTY OF JEFF DAVIS,
GEORGIA, PRESTON BOHANNON,
individually and in his
capacity as Sheriff of the
Jeff Davis Sheriff's Office,
and SCOTT NUNN, individually
and in his capacity as
Deputy with the Jeff Davis
Sheriff's Office,

    Defendants.

2:24-CV-69

**ORDER**

    Before the Court is Defendants Jeff Davis County, Sheriff Preston Bohannon, and Scott Nunn's motion to dismiss in part. Dkt. No. 8. The motion has been fully briefed and is ripe for review. Dkt. Nos. 8, 10, 12. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

**BACKGROUND**[1]

    On March 5, 2022, Defendant Deputy Nunn and Deputy Justin Sanders accompanied Leisa Brewer, Greg Yawn, and an unidentified

---

[1] At this stage, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" <u>Dusek v. JPMorgan Chase & Co.</u>, 832 F.3d 1243, 1246 (11th Cir. 2016).

male to remove farm equipment from 104 Brewer Girtman Lane in Hazlehurst, Georgia. Dkt. No. 6 ¶¶ 13-14. The equipment was at issue in a contested will and probate proceeding. Id. ¶ 14. Upon arrival, Deputies Nunn and Sanders spoke with Plaintiff Jennifer Spell. Id. ¶ 16. Spell acknowledged that the probate proceedings were ongoing, and she and the deputies agreed that the deputies had no authority to enter the property and remove equipment with disputed ownership. Id. As a result, the deputies, Leisa Brewer, Greg Yawn, and the unidentified male left without the farm equipment. Id. ¶ 17.

On June 10, 2022, Deputy Nunn returned to the property, this time unaccompanied by another deputy. Id. ¶ 18. He did not have a warrant to enter the property but proceeded to cut the lock to enter the property. Id. ¶¶ 18-19. Spell was driving her personal vehicle and approached Deputy Nunn on the property. Id. ¶ 20. She asked Deputy Nunn why he trespassed, cut the lock, and was attempting to remove the contested property without a warrant. Id. In response, Deputy Nunn threatened to arrest Spell if she interfered with the removal of the farm equipment. Id. ¶ 21. Deputy Nunn then reached through the driver's side window of Spell's car and attempted to pull Spell from the vehicle. Id. ¶ 22. In doing so, Deputy Nunn twisted Spell's arm behind her back and tried to pull her through the window. Id. Deputy Nunn was unsuccessful, and Spell broke free of his grasp. Id. ¶¶ 22-23. Spell told Deputy

Nunn that she wanted to file a formal complaint against him and then returned home. Id. ¶ 26. At that point, Deputy Nunn made no attempt to arrest Spell. Id.

On the same date, Spell visited the Jeff Davis Sheriff's Office to file a formal report about Deputy Nunn's actions. Id. ¶ 28. Spell was told that she needed to return the following Monday, June 13, 2022, to file the complaint. Id. ¶ 29. On June 13, 2022, Spell returned to the Jeff Davis Sheriff's Office. Id. ¶ 30. Once there, Spell was told that Deputy Nunn issued a warrant for her arrest alleging "Willful[ly] Obstructing Deputy Scott Nunn, a Law Enforcement Officer, in the Lawful Discharge of his Official Duties by Failing to Comply with the Said Officer's Lawful Commands." Id. ¶ 31. As a result, Spell was arrested. Id. ¶ 34. On August 11, 2022, at her arraignment, all the charges against Spell were *nolle prossed* pursuant to O.C.G.A. § 17-8-3. Id. ¶ 35

Spell alleges she suffered a sprained wrist and noticeable bruising as a result of Deputy Nunn attempting to pull her from her vehicle. Id. ¶ 27. Further, Plaintiff claims that she suffered emotional harm and post-traumatic stress from the event. Id. On May 21, 2024, Plaintiff initiated this suit against Jeff Davis County, Sheriff Bohannon, in his individual and official capacities, and Deputy Nunn, in his individual and official capacities. Dkt. No. 1. In her amended complaint, filed July 10, 2024, Spell asserts against Defendants federal claims pursuant to

42 U.S.C. § 1983 for illegal seizure, excessive force, and unlawful detention, as well as state law claims for assault and battery, false imprisonment, negligent hiring, training, and supervision, and negligent and intentional infliction of emotional distress. Dkt No. 6. Defendants have collectively moved to dismiss all claims against Jeff Davis County, Sheriff Bohannon, and Deputy Nunn in his official capacity.[2] Dkt. No. 8.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2]  Defendants do not move to dismiss Plaintiff's claims against Defendant Nunn in his individual capacity (Counts I, II, III, IV, V and VII).  Dkt. No. 8 at 14.

inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009)

(citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## DISCUSSION

### I.   Defendant Jeff Davis County

Plaintiff asserts against Defendant Jeff Davis County claims for violations of her Fourth and Fourteenth Amendment rights, pursuant to Section 1983; a Monell municipal liability claim, pursuant to Section 1983; and state law claims of negligent and intentional infliction of emotional distress and negligent hiring, training, and supervision. Dkt. No. 6 ¶¶ 39-62, 72-80, 87-90. The County argues Plaintiff's Section 1983 claims should be dismissed because it cannot be liable for the actions of the Sheriff or his deputies, and Plaintiff's state law claims are barred by sovereign immunity. Dkt. No. 8 at 5-9.

#### A. Section 1983 and Monell claims

Section 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to

> the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Municipalities and other local government entities are considered "persons" under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). The Supreme Court, however, "has placed strict limitations on municipal liability under § 1983." Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. This is because "the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. Put differently, a local government "will be liable under section 1983 only for acts for which the local government is actually responsible." Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (citing Turquitt v. Jefferson Cnty., 137 F.3d 1285, 1287 (11th Cir. 1998)).

Municipal liability attaches only where the local government's custom or policy caused its employee to violate the plaintiff's constitutional rights. Gold v. City of Miami, 151 F.3d

7

1346, 1350 (11th Cir. 1998) (citations omitted). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom[3] or policy[4] that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)); see also Scott v. Miami Dade Cnty., No. 21-13869, 2023 WL 4196925, at *8 (11th Cir. June 27, 2023) (applying the three McDowell requirements to a § 1983 supervisory liability claim against a county), cert denied, 144 S. Ct. 837 (2024). Typically, a county does not have an "officially-adopted policy of permitting a particular constitutional violation." Grech, 335 F.3d at 1330 (citation omitted). Thus, most plaintiffs must establish "that the county has a custom or practice of permitting [a constitutional violation] and that the county's custom or practice is 'the "moving force [behind] the constitutional violation."'" Id. (quoting City of Canton, 489 U.S. at 389).

Plaintiff argues that her claim against the County is not rooted in the theory of *respondeat superior*, but instead, that the

---

[3] "A custom is a practice that is so settled and permanent that it takes on the force of law." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005).

[4] "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Id.

County was a "moving force" behind the allegedly unconstitutional conduct thereby giving rise to a Monell claim. Dkt. No. 10 at 8. However, this argument fails to appreciate that the County can be liable under Section 1983 only for acts for which it is "actually responsible." Marsh, 268 F.3d at 1027.

"In Georgia, a county has no authority and control over the sheriff's law enforcement function. [The] County does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what policies to adopt, or how to operate his office[.]" Grech, 335 F.3d at 1347. "The counties' lack of authority and control over sheriffs explains why counties have no § 1983 liability for their conduct." Id. "A sheriff's policy or practice cannot be said to speak for the county because the county has no say about that policy or practice." Id. As the Eleventh Circuit has stated, "a county is liable under § 1983 only for acts for which the county is actually responsible." Id. (citing Marsh, 268 F.3d at 1027). Therefore, any policy or practice associated with the sheriff's office's training and supervision of deputies, or the deputies' use of force, seizure, or detention methods necessarily implicates the sheriff, not the county.

Here, Plaintiff's Section 1983 and Monell claims against the County arise out of Deputy Defendant Nunn's alleged use of excessive force, unlawful seizure, and unlawful detention, and the

Sheriff's Office's failure to train and supervise deputies. Dkt. No. 6 ¶ 88. Because a county has "no authority or control over the sheriff's law enforcement function," the amended complaint cannot support Plaintiff's Section 1983 and Monell claims against Jeff Davis County. Grech, 335 F.3d at 1347. For these reasons, the County's motion to dismiss these claims is **GRANTED**.

### B. State Law Claims

Plaintiff has also alleged two state law claims against the County: negligent training and/or supervision of Deputy Nunn and negligent and intentional infliction of emotional distress. Dkt. No. 6 ¶¶ 72-86. Under Georgia law, "sovereign immunity extends to the state and all of its departments and agencies" and "can only be waived by an Act of the General Assembly" explicitly stating so. Ga. Const. art. 1, § 2, ¶ IX. Sovereign immunity applies to sheriffs and counties as well. Carter v. Butts Cnty., 821 F.3d 1310, 1323 (11th Cir. 2016) (applying Georgia law); Kitchen v. CSX Transp., Inc., 6 F.3d 727, 731 (11th Cir. 1993) ("The state of Georgia is immune to suit for any cause of action unless sovereign immunity is expressly waived by constitutional provision or statute. This sovereign immunity extends to counties, as subdivisions of the state."); O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute.").

For certain situations, waiver of sovereign immunity has been codified by statute. Pursuant to the Georgia Tort Claims Act ("GTCA"), enacted in 1992, the General Assembly has enacted a limited waiver of immunity for tort claims:

> The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.

O.C.G.A. § 50-21-23(a). By its plain terms, the waiver applies to tort claims against the "[s]tate," which means "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, . . . and other local authorities." O.C.G.A. § 50-21-22(5). Thus, "the waiver of sovereign immunity afforded by [the GTCA] does not extend to a county." Woodard v. Laurens Cnty., 456 S.E.2d 581, 582 (Ga. 1995). Instead, as to counties, waiver has been limited, such as to claims involving damages arising from the use of any motor vehicle for which "counties [have used their] discretion to purchase liability insurance." Cameron v. Lang, 549 S.E.2d 341, 346 (Ga. 2001); O.C.G.A. § 33-24-51(b). Plaintiff's state law claims against the County are thus barred by sovereign immunity.

Even if counties were included in the GTCA's limited waiver, the outcome here would not change. Section 50-21-23(b) of the GTCA provides that the state waives sovereign immunity only "with respect to actions brought in the courts of the State of Georgia" and does not waive immunity for "actions brought in the courts of the United States." Id. Given that this case was brought in federal court, any potential waiver under O.C.G.A. § 50-21-23(b) would not apply here. See Radical v. Fambro, No. 1:19-cv-4530, 2020 WL 6480929, at *4 (N.D. Ga. June 26, 2020) (dismissing plaintiff's state law claims against Fulton County on this basis). Accordingly, Defendant Jeff Davis County is entitled to sovereign immunity, and the County's motion to dismiss Plaintiff's state law claims is **GRANTED**. Dkt. No. 8.

## II.  Defendants Sheriff Bohannon and Deputy Nunn

Plaintiff has brought claims against Sheriff Bohannon and Deputy Nunn in both their official and individual capacities. The Court addresses each in turn.

### A. Official Capacity

Defendants argue all claims asserted against them in their official capacity should be dismissed because the Eleventh Amendment provides them immunity from the federal law claims and sovereign immunity bars the state law claims. Dkt. No. 8 at 9–12. Conversely, Plaintiff argues these claims should not be dismissed

because Defendants are not entitled to sovereign immunity and the Eleventh Amendment does not apply here. Dkt. No. 10 at 9.

### i.  Eleventh Amendment

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (analyzing Eleventh Amendment immunity of a Georgia sheriff). The Eleventh Amendment bars federal law claims when a state itself is sued or when an "arm of the State" is sued. Id.[5] "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. The Eleventh Circuit analyzes four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309.

First, under the Georgia Constitution, "a Georgia sheriff's office is independent from the county in which it sits, and is

---

[5] When a plaintiff sues a state officer in his official capacity, that suit is considered a suit against the state, or an arm of the state. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citations omitted)).

subject to control by the state legislature." <u>Townsend v. Coffee Cnty.</u>, 854 F. Supp. 2d 1345, 1351 (S.D. Ga. 2011) (citing <u>Manders</u>, 338 F.3d at 1310). "In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function," and this rule extends to sheriffs' deputies who are "employees of the sheriff, not the county." <u>Grech</u>, 335 F.3d at 1336. Thus, the fact that Georgia law places sheriffs' offices under state, not county, control means the first factor weighs in favor of granting Eleventh Amendment immunity to the Sheriff and Deputy Nunn.[6] Moreover, Georgia has "direct and substantial control" over the sheriffs' offices, making this

---

[6] Critically, the <u>Manders</u> test focuses on the law of the state in question. To support her position that Eleventh Amendment immunity does not apply here, Plaintiff directs the Court to Eleventh Circuit precedent stating that a sheriff is a county official. <u>See Hufford v. Rodgers</u>, 912 F.2d 1338 (11th Cir. 1990). However, Plaintiff's argument fails to consider that <u>Hufford</u> involved Florida law, not Georgia law. The Florida Constitution specifically designates sheriffs as county officials, whereas the Georgia Constitution explicitly states that sheriffs' offices are independent from counties. <u>Id.</u> at 1341; <u>Manders</u>, 338 F.3d at 1310. Plaintiff's reliance on <u>Hess v. Port Authority Trans-Hudson Corp.</u> fails for similar reasons. 513 U.S. 30 (1994). <u>Hess</u> involved a bistate entity (i.e., an entity, here a port authority, with two "parent" states) that is "not subject to the unilateral control of any one of the States that compose the federal system." <u>Hess</u>, 513 U.S. at 42; <u>see id.</u> at 40 (explaining that bistate entities are the "creations of three discrete sovereigns: two States and the Federal Government"). The <u>Hess</u> Court held that "there is good reason not to amalgamate [these] entities with agencies of '*one* of the United States' for Eleventh Amendment purposes." <u>Id.</u> (emphasis added).

second factor also weigh "heavily in favor" of granting immunity. Manders, 338 F.3d at 1322.

The third factor cuts both ways because while counties bear "the major burden of funding" sheriffs' offices, that funding is mandated by the state, and the state separately funds sheriffs' annual training, provides for the Governor's disciplinary procedure over sheriffs for use of excessive force, and pays for certain state offenders in sheriff-supervised county jails. Id. at 1323. Indeed, in Georgia, counties "cannot dictate how [sheriffs] spend" the state-mandated budget funding. Id. The Eleventh Circuit found in Manders that, compared to a county's "attenuated" financial control, "state involvement is sufficient to tilt the third factor . . . toward immunity." Id. at 1323-24.

Finally, the fourth factor looks to who is responsible for judgments against a sheriff's office. "[A] Georgia *county* is not monetarily responsible for judgments against a sheriff in tort or civil rights actions, but there is no law expressly requiring the *state* to pay such a judgment, so a sheriff would have to pay that judgment out of his sheriff's office budget." Townsend, 854 F. Supp. 2d at 1351-52 (emphasis added) (citing Manders, 338 F.3d at 1327). "Thus, in a way, both county and state funds might be implicated if a judgment were entered against [the sheriff]." Id. at 1352. However, "a purpose of the Eleventh Amendment is to 'accord[] the States the respect owed them as members of the

15

federation' and not to affront the 'dignity' or 'integrity' of a state by requiring a state to respond to lawsuits in federal courts." Manders, 338 F.3d at 1327. Thus, the consideration of a state's integrity—in terms of who is financially responsible when a sheriff is sued in federal court—cuts against immunity. But a "State's 'integrity' is not limited to who foots the bill, and, at a minimum, the liability-for-adverse-judgment factor does not defeat [a sheriff's] immunity claim." Id. at 1328.

Based on these factors, the Eleventh Circuit found in Manders that a sheriff was an "arm of the State" with regard to his use-of-force policy at a jail. Id. This Court and others have interpreted the holding in Manders to also apply a sheriff's other law enforcement functions beyond jail responsibilities. See, e.g., Townsend, 854 F. Supp. 2d at 1352 ("[A]rrests fall squarely within the traditional law-enforcement responsibilities of a sheriff and his deputies."); Jude v. Morrison, 534 F. Supp. 2d 1365, 1372 (N.D. Ga. 2008) ("[T]his court notes that it is bound by the Eleventh Circuit's determination that when sheriffs (and their deputies) are performing law enforcement duties, they are considered to be an arm of the state, not county officials."); Lewis v. Wilcox, No. 3:06-CV-29, 2007 WL 3102189, at *9 (M.D. Ga. Oct. 23, 2007) ("Law enforcement, like corrections, is an area over which Georgia sheriffs exercise complete and independent control. Consequently, the factors as applied in Manders inform the Court's decision in

this case." (internal citation omitted)). Here, Plaintiff's claims against Sheriff Bohannon also relate to traditional law enforcement functions, specifically Defendant's supervision and training of deputies with respect to investigations of complaints, use of force, and detention and arrest practices. Dkt. No. 6 ¶¶ 42, 47, 60, 75–78. Thus, like in Manders, Sheriff Bohannon is an "arm of the state" and is entitled to Eleventh Amendment immunity for the federal law claims asserted against him.[7]

Additionally, the claims asserted against Deputy Nunn relate to traditional law enforcement functions such as obtaining a

---

[7] Although the amended complaint does not allege that Sheriff Bohannon was personally involved in the arrest, the Eleventh Amendment analysis under the Manders factors still applies to claims against Bohannon in his official capacity. The amended complaint repeatedly alleges that Sheriff Bohannon's policies and customs were a "moving force" behind Deputy Nunn's allegedly unconstitutional arrest, use of force, and detention of Plaintiff. Dkt. No. 6 ¶¶ 42, 47, 60. Any claims against Bohannon in his official capacity under these counts for alleged policymaking or supervision related to illegal seizure (Count I), unlawful detention (Count II), or excessive force (Count III), still involve a law enforcement function, and thus, he is still considered an arm of the State under Manders. See Manders, 338 F.3d at 1319 ("The sheriff's authority to use force or the tools of violence, whether deadly or non-deadly force, . . . [is] directly derived from the State and not delegated through the county entity. In addition, use of force and creating force policy are quintessential policing functions, exercised by sheriffs in initial arrests . . . ."). Because the Eleventh Circuit found that the sheriff in Manders was an arm of the state based on the factors described above for use of force policy in a jail, Sheriff Bohannon, in this case, is an arm of the State for any alleged policy decisions regarding excessive force in arrests and unlawful arrests and detentions. Therefore, Bohannon is protected in his official capacity by Eleventh Amendment immunity and any federal claims against Bohannon in his official capacity must be dismissed.

warrant, making an arrest, and the use of force by an officer. Dkt. No. 6 ¶¶ 40, 45, 52–56. "A deputy's functions are derived from the sheriff's functions, so the deputy's performance of this function is also a state function." Lake v. Skelton, 840 F.3d 1334, 1342 (11th Cir. 2016). The Eleventh Circuit has held that sheriffs' deputies can wear a "state hat" when engaging in functions similar to those of a sheriff. For instance, in Lake, the court concluded that "[b]ecause the sheriff wears a 'state hat' when he denies an inmate's dietary request, and because a deputy receives all of his powers and obligations with respect to feeding inmates from the sheriff, . . . a deputy also wears a 'state hat' when he denies an inmate's dietary request." 840 F.3d at 1342. Similarly, in this case, because Sheriff Bohannon wears a "state hat" when engaging in law enforcement functions such as obtaining warrants, making arrests, and using appropriate force to detain an individual, so too does Deputy Nunn. Id. Thus, the Eleventh Amendment protections afforded to Sheriff Bohannon extend to Deputy Nunn as well. Accordingly, Plaintiff's federal law claims against Sheriff Bohannon and Deputy Nunn in their official capacities are barred by Eleventh Amendment immunity, and Defendants' motion to dismiss those claims is **GRANTED.**

## ii. State Sovereign Immunity

Under the Georgia law of sovereign immunity, Defendants are immune from state law claims asserted against them in their

official capacity. As discussed <u>supra</u>, "[i]n Georgia, 'sovereign immunity extends to the state and all of its departments and agencies.'" <u>Carter</u>, 821 F.3d at 1323 (quoting Ga. Const. art. I § 2, ¶ IX). Sovereign immunity extends to counties, as subdivisions of the state, <u>Kitchen</u>, 6 F.3d at 731, and to sheriffs, as officials of the county, <u>Muckle v. Robinson</u>, No. 2:12-CV-0061, 2013 WL 251113, at *5 (N.D. Ga. Jan. 23, 2013) (citing <u>Nichols v. Pratcher</u>, 650 S.E.2d 380, 384 (Ga. Ct. App. 2007)). Thus, for the purposes of state sovereign immunity under the Georgia Constitution, Sheriff Bohannon and Deputy Nunn, in their official capacities, are considered county officials. "This is true notwithstanding the Court's determination that Sheriff [Bohannon] and the deputy Defendant[], in their official capacities, are 'arms of the state' for purposes of Plaintiff's section 1983 claims" and the Eleventh Amendment. <u>Muckle</u>, 2013 WL 251113, at *5. This seemingly paradoxical result is due to the differences in the type of claim—state law violation or federal law violation—asserted against Defendants. Indeed, "the Georgia Court of Appeals has explained that while sheriffs, under certain circumstances, may be characterized as state actors for purposes of liability under section 1983, for purposes of liability under state law, sheriffs are officials of the county." <u>Id.</u>; see also <u>Boyd v. Nichols</u>, 616 F. Supp. 2d 1331, 1348 (M.D. Ga. 2009) (finding sheriff to be arm

of the state for Eleventh Amendment purposes but a county official for state sovereign immunity purposes).

Defendants are entitled to sovereign immunity against Plaintiff's state law claims unless Plaintiff can show that sovereign immunity has been waived. Carter, 821 F.3d at 1323 ("A defendant sued in his official capacity is entitled to the benefit of the sovereign-immunity defense, but only to the extent that the County has not waived it."); see also Muckle, 2013 WL 251113, at *4 ("[S]uits against county officials in their official capacities are in reality suits against the county."). "The burden of demonstrating a waiver of sovereign immunity falls on the party seeking to benefit from it." Id. at 1324. Plaintiff has not met that burden in this case. Indeed, Plaintiff makes no mention of waiver in either her amended complaint or opposition brief, and instead argues that sovereign immunity does not apply because Sheriff Bohannon is a county employee. Dkt. Nos. 6, 10 at 10.[8] Further, as noted supra, "the waiver of sovereign immunity afforded by [the GTCA] does not extend to a county." Woodard, 456 S.E.2d at 582. Plaintiff has therefore not shown that sovereign immunity has been waived, and Sheriff Bohannon and Deputy Nunn are entitled to sovereign immunity against Plaintiff's state law claims in their

---

[8] Plaintiff makes no reference to the application of sovereign immunity against Defendant Nunn.

official capacities. Accordingly, Defendants' motion to dismiss these claims is **GRANTED.**

## B. Individual Capacity[9]

Plaintiff asserts against Sheriff Bohannon, in his individual capacity, claims for negligent supervision and training (Count VI), as well as negligent and intentional infliction of emotional distress (Count VII).[10] Sheriff Bohannon moves to dismiss these claims because, he argues, Plaintiff fails to allege sufficient facts to support her claims and, even if she did, such claims are barred by official immunity. Dkt. No. 8 at 12-13. Plaintiff argues these claims should not be dismissed because she alleged sufficient facts to show that there is a causal connection between Sheriff Bohannon's deficient supervision and Plaintiff's injuries. Dkt. No. 10 at 15. Further, Plaintiff argues that she has pled sufficient facts to overcome official immunity. Id. at 17. Because

---

[9] As noted supra, Defendants do not move to dismiss Plaintiff's claims against Defendant Nunn in his individual capacity. Dkt. No. 8 at 14. Thus, this section addresses only Plaintiff's claims against Sheriff Bohannon in his individual capacity.

[10] The amended complaint does not specifically state that the claim for negligent and intentional infliction of emotional distress is asserted against Sheriff Bohannon. However, the allegations refer to "Defendants," implying that Plaintiff intends to assert the claim against multiple defendants. Dkt. No. 8 ¶¶ 81-86. Plaintiff further alleges that "Defendants caused [Plaintiff] emotional trauma that was outrageous and egregious. Defendants inflicted emotional trauma on [Plaintiff] by hiring and retaining Defendant Nunn, entrusting him to be a deputy with the Jeff Davis Sheriff's Office, and failing to train and supervise him properly." Id. ¶ 83. This suggests that the cause of action is intended to encompass Sheriff Bohannon's conduct as well.

the Court holds that official immunity protects Sheriff Bohannon from Plaintiff's individual capacity claims, the Court will address only that argument.

Official immunity, which originated from Georgia case law, is now codified in the Georgia Constitution. See Gilbert v. Richardson, 452 S.E.2d 476, 478 (Ga. 1994); Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). This doctrine provides that public employees can be sued "for negligent performance or nonperformance of their 'ministerial functions' or 'if they act with actual malice or with actual intent to cause injury in the performance of their official functions.'" Barnett v. Caldwell, 809 S.E.2d 813, 847 (Ga. 2018) (quoting Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d)). Otherwise, public employees "'shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.'" Id. Put more simply, public employees "may be held personally liable for negligence relating to their official duties only when performing 'ministerial' acts; 'discretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." Id. at 848 (citations omitted).

Ministerial duties are "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Wyno v. Lowndes Cnty., 824 S.E.2d 297, 301 (Ga. 2019). Conversely, discretionary acts

require "personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. Whether an act is ministerial or discretionary depends on the specific facts of the case. Stanley v. Patterson, 878 S.E.2d 529, 534 (Ga. 2022).

Plaintiff argues that while establishing a policy might be a discretionary act, actually following a policy put in place is a ministerial act. Dkt. No. 10 at 14 (citing Phillips v. Walls, 529 S.E.2d 626, 629 (Ga. Ct. App. 2000)). Thus, Plaintiff's position is that the hiring, training, and supervision of deputies is "ministerial in nature." Id. This is incorrect. The Georgia Court of Appeals has "consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function." Jackson v. Payne, 757 S.E.2d 164, 166 (Ga. Ct. App. 2014) (quotation and citation omitted). Thus, Sheriff Bohannon's hiring, training, and supervision of Defendant Nunn is a discretionary act, and "Sheriff [Bohannon] may incur liability as a result of the exercise of such a discretionary function only when the acts complained of are done with wilfulness, malice, or corruption." Id.

"'Actual malice,' as that term is used in the constitutional provision, denotes 'express malice,' i.e., 'a deliberate intention

to do wrong,' and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007) (citing Merrow v. Hawkins, 467 S.E.2d 336 (Ga. 1996)). "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by [Plaintiff]." Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012) (quoting Murphy, 647 S.E.2d at 60 (internal quotation marks omitted)).

Plaintiff has made no argument that Defendant acted with actual malice. See Dkt. No. 10 at 14–15. The amended complaint contains the conclusory statement that Sheriff Bohannon's "negligent hiring, retention, and failure to properly train and supervise [his] officers deprived [Plaintiff] of her rights guaranteed by the Constitution and state laws." Dkt. No. 8 ¶¶ 78, 83. But she alleges no facts to show any type of negligent hiring, training, or supervision. For instance, Plaintiff does not allege that Sheriff Bohannon knew of Deputy Nunn's alleged violent tendencies, turned a blind eye to repeated instances of misbehavior, or failed to ensure that Nunn completed necessary trainings. Moreover, Plaintiff does not allege any facts to show that Sheriff Bohannon acted with actual malice to cause her emotional distress by hiring Nunn. Although a complaint does not need to include "detailed factual allegations," it must contain

24

enough factual matter, accepted as true, to support a claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. 555, 570). Because Plaintiff "has offered *no evidence* that Sheriff [Bohannon] acted with malice or deliberate indifference to a known risk of harm with regard to the supervision and training of his deputies," this minimum pleading requirement is not met. Jackson, 757 S.E.2d at 166 (emphasis added). Accordingly, official immunity applies to protect Sheriff Bohannon from suit in his individual capacity.

**CONCLUSION**

For these reasons, Defendants' motion to dismiss, dkt. no. 8, is **GRANTED.** All claims against Defendants Jeff Davis County and Sheriff Bohannon are **DISMISSED.** The Clerk is **DIRECTED** to terminate the County and Bohannon as defendants in this action. Further, all claims against Defendant Nunn in his official capacity are **DISMISSED.** Defendants do not move to dismiss Plaintiff's claims against Defendant Nunn in his individual capacity, and these claims—Counts I, II, III, IV, V, and VII—remain pending.

**SO ORDERED** this 4th day of March, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA